IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Betty J. Argabrite, | ) | No. CIV 04-00635-CKJ (CRP) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Betty J. Argabrite has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. §405(g). This Social Security Appeal has been referred to the United State Magistrate Judge pursuant to the Rules of Practice of this Court.

Pending before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. For the following reasons, the Magistrate Judge Recommends that the District Court, after its independent review, **grant** Plaintiff's Motion for Summary Judgment and **deny** Defendant's Cross-Motion for Summary Judgment.

PROCEDURAL HISTORY

On December 3, 2002, Plaintiff submitted an Application for Supplemental Security Income and a Disability Report. (TR. 87-89, 95-104). Plaintiff alleged a disability onset date of April 15, 1992, caused by frequent bronchitis, weakness and limited use of left arm, and pain and swelling in right hip and knee. (*Id.*).

Plaintiff's claim was initially denied by letter dated February 26, 2003, as "not severe enough to keep you from working." (TR. 65). Plaintiff filed a request for reconsideration of the denial. In a letter dated May 05, 2003, the Social Security Administration again denied the Plaintiff's request for benefits, finding that while Plaintiff could not perform her past work, there was other work that she could do. (TR. 71).

Plaintiff requested a hearing and the matter was heard by the Honorable Lauren R. Mathon ("ALJ") on March 19, 2004. (TR. 33-62). Plaintiff was not represented at the hearing and was the only person to testify. On May 28, 2004, the ALJ issued her decision finding that the Plaintiff was not disabled under the Social Security Act and as such not eligible for Supplemental Security Income payments. (TR10-19).

Plaintiff requested that the Appeals Council review the ALJ's decision. (TR 6-8). Plaintiff submitted additional evidence including a report from Pulmonary Associates of Southern Arizona, PC dated June 29, 2004; a report from Southeastern Arizona Behavioral Health Services, Inc. dated June 30, 2004; and a letter to Social Security Administration dated July 16, 2004. On September 18, 2004, the Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's decision the final decision of the Commissioner. (TR. 4-5).

THE RECORD ON APPEAL

Plaintiff's statements in the record

Plaintiff was born on September 29, 1946. (TR. 39). At the time of hearing before the ALJ, Plaintiff was 57 years old. (*Id.*). Plaintiff was divorced and living with her aunt in Benson, Arizona. (TR. 39-40). Prior to moving to Arizona in November 2003, Plaintiff lived in Kentucky with her mother and father where she helped to care for her ailing mother until she died in September 2002. (TR. 40, 41). Plaintiff completed high school and one year of business school. (TR. 42).

Plaintiff's work history during her time in Kentucky follows. From 1995 until December 2002, Plaintiff was receiving $50 a week from her family for helping to care for

1   her ill mother. (TR. 43, 47).  In caring for her mother, Plaintiff prepared meals for her, did

2   the laundry and ensured that she got her medicines. (TR. 47).  For about eight years prior to

3   moving to Arizona, Plaintiff worked as a babysitter. (TR. 43-44).  She was paid $5 an hour

4   to sit with two children from approximately 3:00 pm until 6:00 pm, five days a week while

5   school was in session. (*Id.*).  In 1992 Plaintiff had been working for 6 years as a bartender

6   and grill cook. (TR. 46).  She had to leave her job when her shoulder was broken. (*Id.*).  Prior

7   to that job she had worked for 13 years as a bartender in different places. (*Id.*).

8       Plaintiff testified that she had problems with her right leg and knee that prevented her

9   from walking very far without stopping. (TR. 47-48).  She also testified that Dr. Carnett had

10   diagnosed her with deteriorating arthritis in her knee and arthritis in her right hip. (TR. 49).

11   The problems with her right leg, knee, and hip allow her to stand for only 30-45 minutes.

12   (TR. 52).  Plaintiff indicated that she may be able to stand for a maximum of an hour but that

13   would cause her pain and would be exhausting. (*Id.*).  She also indicated that these problems

14   would allow her to sit for between an hour and an hour and a half before she would have to

15   change positions due to aching and numbness. (*Id.*).  Plaintiff testified that the problems with

16   her knee prevent her from squatting because her knee would give out and she would fall.

17   (TR. 54).  According to Plaintiff even the task of making her bed "absolutely wears me out"

18   because it caused her to get on her knees and to bend which causes pain in her lower back.

19   (TR.54).  Plaintiff testified that she had been prescribed medication by Dr. Carnett to help

20   ease the pain. (TR. 50).

21       Plaintiff has pain in her left arm caused by a broken shoulder. (TR.48).  She testified

22   that Dr. Carnett diagnosed her with deteriorating arthritis in her shoulder. (TR. 49).  Plaintiff

23   complained that she had limited use of the left arm. (TR. 48).  She testified that she is unable

24   to pick things up with it. (*Id.*).  "I have quite a bit of problems if I pick something up...like

25   a heavy pot...I have to use both hands.  I can't do it with either one of my hands.  It's just the

26   weakness." (TR. 53).  Plaintiff indicated that she could not hold a gallon of milk with her left

27   hand and would have to use two hands. (*Id.*).  She also indicated that she would be able to

28

1    carry 15 pounds with both hands as long as she was just moving it a short distance. (*Id.*).

2    Plaintiff testified that she can bathe herself but cannot take a shower because of her arm. (TR.

3    58). Despite her problems with her arm, Plaintiff testified that she is able to crochet and do

4    bead projects. (TR. 57). She does not have a problem with the coordination in her fingers.

5    (*Id.*).

6           The pain caused by Plaintiff's leg, knee, hip and shoulder prevent her from sleeping

7    well. Dr. Carnett gave her Tomazapan to help her sleep. (TR. 54). She indicated that she

8    slept better with the medication because she no longer woke up every hour to change

9    positions but still did not sleep much. (*Id.*). Plaintiff takes other medications to help with the

10   pain. She testified that she takes Sulindac which eases the pain but does not completely take

11   it away. (TR. 51). Plaintiff rated her pain, on a scale of one to ten, as "around a seven or

12   eight since it's constantly there." (*Id.*).

13          One of Plaintiff's primary complaints was that she was limited in her activities because

14   she becomes easily winded. She testified that Dr. Carnett had diagnosed her with

15   emphysema and that she had always suffered with bronchitis. (TR. 48-49). She has to stop

16   after walking less than a block to catch her breath. (TR. 48). A walk from her bedroom down

17   the hallway to the kitchen or livingroom leaves her out of breath and tired. (TR. 58). Plaintiff

18   takes Albuterol and Flovent, (TR. 50-51) and both medications help somewhat. (TR. 51).

19   Plaintiff testified that she smokes, although she has reduced the amount she smokes from a

20   pack and a half a day to about six or eight cigarettes a day. (TR. 59).

21          In addition to her physical ailments, Plaintiff also suffers from anxiety and depression.

22   (TR. 55-56). Plaintiff testified that she has been seeing a therapist and psychiatrist for these

23   problems. (*Id.*). She testified that Dr. Sullivan had prescribed and she was taking Paxil. (TR.

24   55). According to Plaintiff the medication helped some but that she continued to get anxious

25   and depressed at times. (TR. 56). She indicated that she had problems with her short-term

26   memory, had emotional problems, and a lot of anxiety. (*Id.*). Plaintiff's anxiety manifests

27   itself in the form of panic attacks and hyperventilation when she is upset. (*Id.*). The doctor

28

1  prescribed Adivan for her anxiety, which Plaintiff testified she has taken a couple of times.

2  (*Id.*).  Plaintiff testified that it "helped ease me down." (*Id.*).

3      Medical Evidence

4      *Plaintiff's Physicians*

5      Once Plaintiff had moved to Arizona and obtained medical insurance, she began to

6  see Dr. William Carnett. (TR. 49). Dr. Carnett notes degenerative changes in Plaintiff's knee,

7  hip and shoulder. (TR.214). Dr. Carnett assessed Plaintiff's health problems to also include

8  arthritis, chronic obstructive lung disease, and anxiety. (TR. 230). Dr. Carnett referred

9  Plaintiff to Dr. Thomas C. Rotkis of Pulmonary Associates of Southern Arizona, P.C. (TR.

10  239).  Dr. Rotkis's report was received after the ALJ's decision but was considered by the

11  Appeals Council.  Dr. Rotkis indicated that Plaintiff suffered from at least moderate

12  obstructive lung disease. (TR. 240).

13      Plaintiff was also seen by Southeastern Arizona Behavioral Health Services Inc. (TR.

14  236-238, 243-246). Dr. William R. Sullivan, M.D., submitted a letter dated December 13,

15  2003, which listed his diagnostic impressions to include chronic major depressive disorder,

16  adult victim of physical abuse, and alcohol abuse. (TR. 237). Reports from Southeastern

17  Arizona Behavioral Health Services Inc. from March 24, 2004 through June 30, 2004 were

18  received after the ALJ decision but were considered by the Appeals Council.

19      *State-Agency Consultative and Non-Examining Physicians*

20      On January 23, 2003, Dr. Rita Ratliff of Cardiopulmonary Laboratories, Inc.

21  performed a consultative exam at the request of the state agency in connection with Plaintiff's

22  disability claim. (TR. 161-167). Dr. Ratliff assessed Plaintiff as having normal passive range

23  of her left shoulder with no evidence of motor or neurologic deficit. (TR. 163).  The doctor

24  also assessed Plaintiff's right hip and knee as normal with full range of motion. (*Id.*).  Dr.

25  Ratliff assessed Plaintiff's claims of shortness of breath as lacking significant findings on

26  physical exam and only minimal obstructive airway disease according to pulmonary function

27  tests. (TR. 163-164). The doctor further indicated that there was no evidence of restriction

28

for stooping, bending, reaching, sitting, standing, lifting, carrying, handling objects, moving about, or traveling.

On January 22, 2003, Dr. Stuart A. Cooke, a clinical psychologist, performed consultative psychological examination of the Plaintiff. (TR. 155-160).   Dr. Cooke's diagnoses were:

| | |
|---|---|
| AXIS I: | Major depression, recurrent. |
| AXIS II: | Diagnosis deferred. |
| AXIS III: | Pain in right hip, right knee, and left shoulder. |
| AXIS IV: | Psychosocial stressors: recent death of mother, taking care of father |
| AXIS V: | Current GAF 55. |

(TR. 159).  In Dr. Cooke's summary of his findings, he noted that Plaintiff is a woman who has had emotional problems for most of her life. (TR. 160).  She has mood swings which appear to be episodes of extreme agitation. (*Id.*).  She is prescribed medication but has not taken the medication for two months. (*Id.*).  Dr. Cooke assessed as "good" Plaintiff's ability to understand, retain and follow instructions as well as her ability to maintain attention to perform simple repetitive tasks. (*Id.*).  The doctor assessed as "poor" Plaintiff's ability to perform in an emotionally stable manner and her ability to tolerate stress and pressures associated with day-to-day work activity. (*Id.*).  He assessed as "fair" Plaintiff's ability to relate to other people. (*Id.*).

Consultative psychological examinations were also performed by Dr. Edward Ross, counseling psychologist, and Dr. Jane Brake. (TR. 168-203).  Both doctors assessed Plaintiff as having little limitation but both doctors indicated that residual functional capacity assessment was necessary. (*Id.*).

*Lay Witnesses*

Lay witness testimony was submitted to the ALJ in the form of a letter from Reford Dingess, Jr., Plaintiff's cousin, dated March 2, 2002. (TR. 152).  In his letter, Mr. Dingess indicated that a walk from one end of her home to the other leaves the Plaintiff breathless and she is forced to control her breathing before she can speak or begin any other activity. (*Id.*).

. . . . . .

1  Mr. Dingess further described Plaintiff as having "little or no strength or mobility in her left

2  shoulder, and that her ability to walk is so greatly hampered, that she is unable to walk very

3  far without stops to rest." (*Id.*). He also described her mental state as fragile and that he had

4  witnessed episodes of crying and sobbing. (*Id.*).

5      A second letter was submitted by Mr. Dingess dated July 16, 2004. This letter was

6  submitted after the ALJ had issued her ruling but was considered by the Appeals Council.

7  (TR. 247). In this letter, Mr. Dingess describes the Plaintiff as never having been able to

8  function physically. (*Id.*). He also describes that she is always in pain, is unable to do basic

9  things for any period of time and is limited in her ability to move, bend or stretch. (*Id.*). Mr.

10  Dingess describes Plaintiff's mental state as having become mean and aggressive. (*Id.*). He

11  further describes that Plaintiff talks to herself and to pictures of her deceased mother. (*Id.*).

12  He reports that she has outburst of anger and depression which include threats of violence

13  and suicide. (*Id.*). Mr. Dingess indicates that Plaintiff checked herself into the Psychiatric

14  Unit of Southeastern Behavioral Services Hospital on July 15, 2004. (*Id.*).

15  CLAIM EVALUATION

16      Disability claims are evaluated pursuant to a five-step sequential process. 20 C.F.R.

17  §§404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step

18  requires a determination of whether the claimant is engaged in substantial gainful activity.

19  20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the claimant is not disabled under the Act

20  and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the

21  ALJ then proceeds to step two which requires a determination of whether the claimant has

22  a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c),

23  416.920(c).

24      In making a determination at step two, the ALJ uses medical evidence to consider

25  whether the claimant's impairment more than minimally limited or restricted his or her

26  physical or mental ability to do basic work activities. *Id.* If the ALJ concludes that the

27  impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ

28  proceeds to step three which requires a determination of whether the impairment meets or

equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App.1.  If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled and no further inquiry is necessary.  If a decision cannot be made based on the claimant's then current work activity or on medical facts alone because the claimant's impairment does not meet or equal a listed impairment, then evaluation proceeds to the fourth step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform past work.   20 C.F.R. §§ 404.1520(e), 416.920(e).  If the ALJ concludes that the claimant has RFC to perform past work, then the claim is denied.  *Id*.  However, if the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(f). 416.920(f).

At step five, in determining whether the claimant retained the ability to perform other work, the ALJ may refer to Medical Vocational Guidelines ("grids") promulgated by the SSA.  *Desrosiers,* 846 F.2d at 576-577.  The grids are a valid basis for denying claims where they accurately describe the claimant's abilities and limitations.  *Heckler v. Campbell,* 461 U.S. 458, 462, n.5 (1983).  However, because the grids are based on exertional or strength factors, where the claimant has significant nonexertional limitations, the grids do not apply. *Penny,* 2 F.3d at 958-959; *Reddick v. Chater,* 157 F.3d 715, 729 (9th Cir. 1998). Where the grids do not apply,  the ALJ must use a vocational expert in making a determination at step five.  *Desrosiers,* 846 F.2d at 580.

. . . . . .

---

[1]Residual functional capacity is defined as that which an individual can still do despite her limitations.  20 C.F.R. § 404.1545.

1    THE ALJ'S FINDINGS

2         In the instant case, the ALJ made the following findings:

3         1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

4

5         2. The claimant's impairments are considered "severe" in combination based on the requirements in the Regulations 20 CFR § 416.920(b): chronic obstructive pulmonary disease (COPD), minor degenerative changes of the right knee, mild degenerative changes of the right hip, mild to moderate degenerative changes of the left shoulder, a depressive disorder, and a generalized anxiety disorder.

6

7         3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

8

9         4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

10

11        5. The claimant has the following residual functional capacity: she remains capable of medium-level physical activity, must avoid concentrated exposure to fumes/odors/dusts/gases/poor ventilation, and retains the capacity to understand/recall a range of tasks, complete routine work without excessive productivity demands, tolerate coworkers/supervisors in object-focused jobs, and make changes at work.

12

13        6. The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).

14

15        7. The claimant is an "individual of advanced age" (20 CFR § 416.963).

16        8. The claimant has a "high school (or high school equivalent) education" and received one year of business training (20 CFR § 416.964).

17

18        9. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

19        10. The claimant has the residual functional capacity to perform a wide range of medium work (20 CFR § 416.967).

20

21        11. Based on an exertional capacity for medium work, and the claimant's age, education and work experience, Medical-Vocational Rules 203.14 and 203.15, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

22

23        12. The claimant's capacity for a wide range of medium work is substantially intact and has not been significantly compromised by her nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

24

25        13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

26

27   (TR. 17-18).

28

1    The ALJ commented that Dr. Carnett, Plaintiff's treating physician, was of the opinion
2    that Plaintiff was unable to perform substantial gainful activity but had not provided precise
3    restrictions and admitted that Plaintiff needed a comprehensive evaluation.(TR. 14).  The
4    ALJ also noted that Dr. Carnett's reference to "pulmonary function test evidence of
5    significant restrictive disease consistent with COPD, but did not reconcile that statement with
6    the pulmonary function report documenting 'mild restriction.'" (TR. 14-15 internal citations
7    omitted).  The ALJ found Dr. Carnett's functional assessments of Plaintiff to be "vague, and
8    conclusory, and inconsistent with his own clinical notes and the objective findings provided
9    by him and other physicians" (TR. 17) and based on that rejected the doctor's assessments.

10    The ALJ noted that Dr. Cooke had commented that "This lady is prescribed
11    medication but apparently does not take her medication as prescribed and has not for two
12    months.'" (TR 14).  The ALJ found this to be significant and that when considered along with
13    other information on the record, "suggests that claimant's conditions are not unamenable to
14    treatment, but rather are affected at times by her failure to follow prescribed treatment." (TR.
15    15).

16    ARGUMENT

17    Plaintiff's Motion for Summary Judgment

18    Plaintiff argues that the ALJ rejected the opinions of her treating physician, Dr.
19    Carnett, without giving clear and convincing reasons for doing so. (Plaintiff's Motion, p.7-9).
20    Plaintiff further argues that the ALJ should have obtained the advice of a vocational expert
21    to determine if non-exertional limitations would restrict the range of available jobs. (*Id.* at
22    9-11). Plaintiff asserts that the ALJ erred in rejecting Plaintiff's testimony concerning her
23    own limitations and symptoms. (*Id.* at 11-13). Plaintiff argues that the ALJ did so by
24    isolating facts, disregarding evidence in its entirety and failing to acknowledge her
25    responsibility to develop the record. (*Id.*).  Plaintiff also asserts that new evidence exists from
26    her treating psychiatrist, providing the opinion that Plaintiff is not stable enough to work. (*Id.*
27    at 13). Finally, Plaintiff argues that the ALJ erred when she failed to consider lay evidence
28

1  from Plaintiff's cousin, presented in the form of two letters. (*Id.* at 14). Plaintiff requests that

2  this Court reverse the ALJ's decision and remand for benefits.

3         Defendant's Cross-Motion for Summary Judgment

4         Defendant argues that the ALJ properly evaluated the opinion of Plaintiff's treating

5  physician finding that Dr. Carnett's opinion was not supported by objective medical evidence

6  and was vague, conclusory and inconsistent with his own treatment notes. (Defendant's

7  Motion, p. 2-4). Defendant also asserts that the ALJ properly determined that Plaintiff could

8  perform medium level work and a vocational expert was not needed because the ALJ found

9  that Plaintiff's non-exertional limitations did not significantly limit her ability to perform

10 unskilled work. (*Id.* at 5-6). Defendant further argues that the ALJ provided sufficiently

11 specific rationale for discrediting Plaintiff's testimony. (*Id.* at 6-8). Defendant asserts that the

12 new evidence referred to by Plaintiff is not new or material and as such does not warrant

13 remand for reconsideration. (*Id.* at 9). Finally, Defendant argues that Third Party evidence

14 does not warrant remand because an ALJ may discount lay witness evidence when it

15 conflicts with medical evidence and it is Defendant's position that the medical evidence was

16 more than persuasive to discredit the lay witness evidence in this case. (*Id.* at 10-11). Thus

17 the Defendant contends that there are no grounds for remand and as such Plaintiff's motion

18 for summary judgment should be denied and Defendant's cross-motion for summary

19 judgment should be granted.

20 STANDARD OF REVIEW

21        Pursuant to 42 U.S.C. § 423(d)(1)(A), an insured individual is entitled to disability

22 insurance benefits if he or she demonstrates, through medically acceptable clinical or

23 laboratory standards, an inability to engage in substantial gainful activity due to a physical

24 or mental impairment that can be expected to last for a continuous period of at least twelve

25 months. The Ninth Circuit has stated that "'a claimant will be found disabled only if the

26 impairment is so severe that, considering age, education, and work experience, that person

27 cannot engage in any other kind of substantial gainful work which exists in the national

28

1   economy.'"  *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) quoting *Marcia v. Sullivan,*

2   900 F.2d 172, 174 (9th Cir. 1990).

3          To establish a *prima facie* case of disability, the claimant must demonstrate an

4   inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir.

5   1984).  Once the claimant meets that burden, the Commissioner must come forward with

6   substantial evidence establishing that the claimant is not disabled.  *Fife v. Heckler*, 767 F.2d

7   1427, 1429 (9th Cir. 1985).

8          Pursuant to 42 U.S.C. §405(g), the findings of the Commissioner are conclusive and

9   courts may overturn the decision to deny benefits "only if it is not supported by substantial

10  evidence or it is based on legal error."  *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.

11  1992)(citations omitted).  Therefore, the Commissioner's determination that a claimant is not

12  disabled must be upheld if the Commissioner applied the proper legal standards and if the

13  record as a whole contains substantial evidence to support the decision.  *Clem v. Sullivan*,

14  894 F.2d 328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th

15  Cir. 1988); *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)).  Substantial evidence is

16  defined as such relevant evidence which a reasonable mind might accept as adequate to

17  support a conclusion. *Jamerson v. Chater,* 112 F.3d 1064, 1067-68 (9th Cir. 1997); *Winans*

18  *v. Bowen,* 853 F.2d 643, 644 (9th Cir. 1988).  However, substantial evidence is less than a

19  preponderance. *Matney,* 981 F.2d at 1019.  A denial of Social Security benefits will be set

20  aside if the Commissioner fails to apply proper legal standards in weighing the evidence even

21  though the findings may be supported by substantial evidence. *Winans,* 853 F.2d at 644.

22         The Commissioner, not the court, is charged with the duty to weigh the evidence,

23  resolve material conflicts in the evidence and determine the case accordingly. *Id.*  However,

24  when applying the substantial evidence standard, the court should not mechanically accept

25  the Commissioner's findings but should review the record critically and thoroughly. *Day v.*

26  *Weinberger*, 522 F.2d 1154 (9th Cir. 1975).  Reviewing courts must consider the evidence

27  that supports as well as detracts from the examiner's conclusion. *Id*. at 1156.  Moreover, "if

28

1    the evidence can support either outcome, the court may not substitute its judgment for that

2    of the ALJ." *Matney,* 981 F.2d at 1019

3        In evaluating evidence to determine whether a claimant is disabled, the opinions of

4    treating physicians are entitled to great weight. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th

5    Cir. 1989). However, even a treating physician's opinion is not necessarily conclusive on

6    either the issue of a physical condition or the ultimate issue of disability. *Id.* When resolving

7    a conflict between the opinion  of a treating physician and that of an examining physician,

8    the opinion of the treating physician is entitled to greater weight and may be rejected only

9    on the basis of findings setting forth specific legitimate reasons based on substantial evidence

10   of record.  *Magallanes,* 881 F.2d at 751.  Moreover, the Commissioner may reject the

11   treating physician's uncontradicted opinion as long as the Commissioner sets forth clear and

12   convincing reasons for doing so.  *Magallanes*, 881 F.2d at 751.

13       Further, when medical reports are inconclusive, questions of credibility and resolution

14   of conflicts in the testimony are functions solely of the Commissioner. *Magallanes,* 881 F.2d

15   at 751 (citations omitted).  However, the Commissioner's finding that a claimant is less than

16   credible must have some support in the record. *See  Light v. Social Security Administration,*

17   119 F.3d 789 (9th Cir. 1997); *see also Connett v. Barnhart,* 340 F.3d 871 (9th Cir. 2003).

18   <u>DISCUSSION</u>

19       <u>Determination of RFC</u>

20       The ALJ erred at step five in determining the Plaintiff's RFC to perform substantial

21   gainful activity in the national economy.  The ALJ's conclusion that Plaintiff is capable of

22   performing medium level physical activity is not supported by substantial evidence.  The

23   Social Security Administration classifies work as sedentary, light, medium, heavy, or very

24   heavy depending on the required physical exertion. 20 CFR § 404.1567.  Medium level work

25   is defined as follows:

26       Medium work involves lifting no more than 50 pounds at a time with frequent
     lifting or carrying of objects weighing up to 25 pounds.  If someone can do
27       medium work, we determine that he or she can also do sedentary and light
     work.

28

1   20 CFR § 404.1567(c).  There is no medical source that quantifies the effect of Plaintiff's
2   physical conditions and her ability to perform work related tasks such as lifting, walking,
3   standing, pushing and pulling.  In fact, the ALJ in her evaluation of the evidence states that
4   "Claimant's residual functional capacity remains to be assessed." (TR. 14).

5        The ALJ concluded that Plaintiff could not perform her past relevant work as
6   bartender, waitress, and grill cook.  According to the Dictionary of Occupational Titles, both
7   work as bartender and waitress are considered light work.  It does not follow that if Plaintiff
8   cannot perform past light work, that she is capable of performing medium level work.
9   Accordingly, the ALJ's finding at step five that Plaintiff can perform medium level work and
10  is thus not disabled is not supported by substantial evidence.

11       The ALJ further erred in determining Plaintiff's RFC by failing to obtain the opinion
12  of a vocational expert.  The ALJ may rely on the Medical-Vocational Guidelines (the "grids")
13  as opposed to the testimony of a vocational expert in determining RFC, if the grids accurately
14  and completely describe a claimants impairment. *Holohan v. Massanari*, 246 F.3d 1195,
15  1208 (9th Cir.2001) citing *Reddick v. Chater*, 157 F.3d 715 (9th Cir.1998).  If the grids do not
16  completely and accurately describe a claimants impairments then the ALJ must hear
17  testimony from a vocational expert. *Id.*  In this case, Plaintiff was diagnosed with depressive
18  disorder and generalized anxiety disorder.  The ALJ concluded that "claimant's capacity for
19  a wide range of medium work is substantially intact and has not been significantly
20  compromised by her nonexertional limitations." (TR. 18).  The ALJ made this conclusion
21  despite the opinion of Dr. Cooke, who indicated that Plaintiff's "ability to perform in an
22  emotionally stable manner would be poor" and that her ability to handle the stress and
23  pressures of day-to-day work would also be poor. (TR. 160).  In determining that Plaintiff's
24  mental health did not pose a substantial limitation to Plaintiff's ability to work, the ALJ may
25  have relied on the consultative reports of Dr. Ross and Dr. Brake.  Both doctors assessed
26  Plaintiff as having depression and anxiety disorders but found that they posed at most only
27  mild to moderate limitations.

28

1    Even if the ALJ did not find Plaintiff's mental health diagnosis sufficient to warrant

2    the testimony of a vocational expert, her own determination that Plaintiff should avoid jobs

3    with concentrated exposure to fumes, odor, dusts, gases, and poor ventilation (*Id.*) indicates

4    that Plaintiff did suffer from nonexertional limitations affecting the types of jobs available.

5    *Kail v. Heckler*, 722 F.2d 1496 (9th Cir.1984).  In her decision, the ALJ states that "the

6    nonexertional aspects of the claimant's condition preclude strict application of the Medical-

7    Vocational Rules." (TR. 17).  The ALJ then indicates that she still finds the grids to be useful

8    in assessing the Plaintiff's disability. (*Id.*)   Since the grids only address problems with

9    strength, they could not have completely and accurately described the Plaintiff's impairments

10   and the ALJ should have taken testimony from a vocational expert.  While this would

11   warrant remand for further proceedings, this error when considered with the additional errors

12   made by the ALJ are sufficient cause for the Magistrate Judge to recommend remand for

13   award of benefits.

14          Opinion of Plaintiff's treating physician

15          The ALJ determined that the opinion of Dr. Carnett, the treating physician, was not

16   conclusive of disability.  While the testimony of a treating physician is entitled to great

17   weight, an ALJ may reject it if she establishes clear and convincing reasons for so doing.

18   *Magallanes*, 881 F.2d 747, 751(9th Cir.1989).   The ALJ reasoned that Dr. Carnett's

19   assessment was vague and conclusory as well as inconsistent with his own notes and the

20   findings of other doctors. (TR. 17).  Courts have found this to be a sufficient reason for

21   rejecting a treating physician's opinion, however, substantial evidence must exist to support

22   such a conclusion. *Holohan* 246 F.3d at 1205.  The ALJ noted that Dr. Carnett's notes

23   indicated improvement in Plaintiff's breathing and that this was inconsistent with his

24   determination that Plaintiff was disabled.  However, Dr. Carnett's notes from that visit still

25   indicate that Plaintiff's breathing required continued monitoring. (TR. 230). Those notes also

26   indicate that Dr. Carnett assessed Plaintiff with COPD (chronic obstructive pulmonary

27   . . . . . .

28

1   disease).  Notes from each of the Plaintiff's visits with Dr. Carnett indicate that the doctor

2   was monitoring her breathing and believed her problems to be consistent with COPD.

3          Dr. Carnett further referred Plaintiff to Dr. Rotkis, a pulmonary specialist, for

4   evaluation of the condition. (TR. 239-240).  This treating physician also indicated that

5   Plaintiff suffered from at least moderate obstructive lung disease. *Id.*  While the ALJ did not

6   have the report from the pulmonary specialist to review at the time of the hearing, the report

7   was incorporated in the record by the Appeals Council.  Because these records were

8   incorporated by the Appeals Council, they may be considered by the reviewing court.

9   *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir.1993).  Thus, Dr. Carnett's evaluation was consistent

10  with the findings another doctor, that of Dr. Rotkis.  As treating physicians, both Dr.

11  Carnett's and Dr. Rotkis's, opinions are entitled to great weight.  The ALJ did not provide

12  clear and convincing reasons supported by substantial evidence for rejecting Dr. Carnett's

13  opinion. *See Holohan* 246 F.3d 1195.

14         Lay witness testimony

15         Plaintiff's cousin, Reford Dingess, Jr., presented testimony to the ALJ in the form of

16  a letter dated March 2, 2002.  Dingess also submitted a letter dated July 16, 2004, which was

17  made part of the record by the Appeals Council.  Testimony of friends and family members

18  in a position to observe a claimant's symptoms and daily activities is routinely treated as

19  competent evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987) citing *Bilby v.*

20  *Schweiker*, 762 F.2d 716 (9th Cir.1985).  An ALJ must take lay witness testimony into

21  account and may disregard it only if she gives reasons germane to each witness for doing so.

22  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001) citing *Nguyen v. Chater*, 100 F.3d 1462,

23  1467 (9th Cir.1996).  The ALJ makes no reference to the letter authored by Dingess.  Because

24  she makes no reference to the letter, it is difficult for the Court to determine if the ALJ took

25  the letter into account or if she disregarded it.  If the ALJ did disregard the evidence

26  presented by Dingess she should have given reasons for doing so.  Furthermore, the ALJ is

27  required to "consider observations by non-medical sources as to how an impairment affects

28  a claimant's ability to work." *Sprague* 812 F.2d at 1232.  The Defendant argues that at most

1  the ALJ's failure to discuss Dingess's letter is harmless error because his letter is contrary to

2  objective medical evidence. (Defendant Motion, p. 10) The harmless error rule is applicable

3  where the ALJ's decision is supported by substantial evidence. *Booz v. Secretary*, 734 F.2d

4  1378 (9th Cir.1984).  Because the testimony of Dingess corroborates the inappropriately

5  rejected testimony of Dr. Carnett as well as that of Plaintiff, discussed below, there is not

6  substantial evidence to reject Dingess's testimony and thus the harmless error rule would not

7  apply.  Failure of the ALJ to consider the observations of lay witnesses is contrary to

8  established law and when considered in combination with the other errors made in this case

9  is not harmless error.  This conclusion may have been different had the ALJ taken the time

10 to acknowledge the testimony presented by Dingess, indicating whether or not she had

11 accepted or rejected the testimony and the reasons for doing such.

12        Credibility of Plaintiff's testimony

13        A claimant who alleges disability based on subjective symptoms "must produce

14 objective medical evidence of an underlying impairment or impairments" and "show that the

15 impairment or combination of impairments could reasonably be expected to (not that it did

16 in fact) produce some degree of symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th

17 Cir.1996).  "The claimant need not produce objective medical evidence of the pain or fatigue

18 itself or the severity thereof."  *Id.*  "Nor must the claimant produce objective medical

19 evidence of the causal relationship between the medically determinable impairment and the

20 symptom."  *Id.*  "Finally, the claimant need not show that her impairment could reasonably

21 be expected to cause the *severity* of the symptom she has alleged; she need only show that

22 it could reasonably have caused *some* degree of symptom."  *Id.* (emphasis added).  This

23 approach to the evaluation of a claimant's testimony "reflects the highly subjective and

24 idiosyncratic nature of pain and other such symptoms."  *Id.*

25        Once a claimant makes the required showing "and there is no affirmative evidence

26 suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the

27 severity of her symptoms only if she makes specific findings stating clear and convincing

28 reasons for doing so."  *Id.* at 1283-84.  "[T]he ALJ may consider, for example (1) ordinary

1    techniques of credibility evaluation, such as the claimant's reputation for lying, prior

2    inconsistent statements concerning the symptoms, and other testimony by the claimant that

3    appears less than candid; (2) unexplained or inadequately explained failure to seek treatment

4    or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at

5    1284.

6         In assessing Plaintiff's credibility, the ALJ indicates that Plaintiff's complaints of

7    extreme pulmonary symptoms were not supported by medical findings of Dr. Ratliff that

8    pulmonary tests showed only minimal obstructive airway disease. (TR. 14).  The ALJ also

9    found that Plaintiff's complaints regarding her orthopedic impairments were not consistent

10   with the limited amount of degenerative changes visible in the x-rays. (TR. 15).  The ALJ

11   rejected the Plaintiff's testimony because she found it disproportionate with the clinical

12   findings.  However, the ALJ's analysis is legally incorrect.  Plaintiff need not provide proof

13   of the level of pain or other symptom. *See Smolen*, 80 F.3d at 1282.  She need only provide

14   proof of the underlying ailment that could cause some degree of pain. *Id.*  She has done so.

15        The ALJ indicated that she did not find Plaintiff's own description of her

16   symptoms/limitations to be credible to the extent that Plaintiff claimed. (TR.16). The ALJ

17   made this determination based on the fact that Plaintiff had worked for a few hours a week

18   as a babysitter prior to moving to Arizona, as well as the fact that Plaintiff helped provide

19   care for her ailing mother and elderly father. (*Id.,* TR. 43-44).  Plaintiff helped her mother

20   and father by cooking, doing laundry, and helping with her mother's medications. (*Id.*, TR.

21   43, 47).  The ALJ also noted that Plaintiff's activities of crocheting, handcrafts, and computer

22   games also effected the credibility of Plaintiff's subjective testimony about her disability.

23        Under certain circumstances, the claimant's record of daily activities may be used to

24   discount her allegations of disabling pain.  "[I]f, despite [her] claims of pain a claimant is

25   able to perform household chores and other activities that involve many of the same physical

26   tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the

27   claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597,

28   603 (9th Cir.1989).  "This line of reasoning clearly has its limits: The Social Security Act

1   does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and

2   many home activities are not easily transferable to what may be the more grueling

3   environment of the workplace, where it might be impossible to periodically rest or take

4   medication." *Id.*

5        Plaintiff indicated that her daily tasks were done with difficulty.  She indicated that

6   she needed to use two hands to lift a heavy pot or a gallon of milk. (TR. 53).  Plaintiff

7   testified that she could only lift something heavy for a short time, basically to move it a short

8   distance. (*Id.*).  Plaintiff also indicated that tasks such as making the bed  "absolutely wears

9   me out," and that her aunt, whom she lives with, helps her strip and make the bed. (TR. 54,

10  57) Plaintiff further testified that she performed the light tasks like dusting. (TR. 57).

11  Plaintiff also indicated that when caring for her parents, she did not have to perform the

12  heavy tasks like dressing or bathing her mother as there was hospice care that provided that.

13  (TR. 47).  Plaintiff indicated that she did some crocheting and a little bead projects because

14  she did not have problems with the coordination in her fingers, just with heavy or awkward

15  items. (TR. 57).  Plaintiff also indicated that she was not able to sit at her computer for more

16  than an hour without having to move around. (TR. 58).  Plaintiff testified that a walk from

17  her bedroom to the hallway and kitchen or living room would make her tired and out of

18  breath. (TR. 58).

19       This ability to perform some limited household activities is not inconsistent with

20  Plaintiff's subjective testimony about her limitations.  *See Prince v. Bowen*, 894 F.2d 283,

21  286 (8th Cir.1990)  ("[A]n ability to do light housecleaning does not necessarily indicate an

22  ability to perform gainful employment.");  *See also Reddick v. Chater*, 157 F.3d 715, 722 (9th

23  Cir.1998)  ("Several courts, including this one, have recognized that disability claimants

24  should not be penalized for attempting to lead normal lives in the face of their limitations.").

25  Household activities are performed intermittently rather than continuously and may be done

26  in spite of the claimant's pain.  *See Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir.1967);

27  *See also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998) (The ALJ could not discount

28  claimant's subjective testimony based on an ability to work sporadically with periods of

1    rest.).  In this case, there is no evidence Plaintiff's daily activities are performed with the type

2    of persistence and pace required in the work place.  Accordingly, her range of daily activities

3    does not provide a substantial basis for discounting her subjective testimony.  *See Peterman*

4    *v. Chater*, 946 F. Supp. 734, 738 (N.D. Iowa, 1996);  *See also Reddick v. Chater*, 157 F.3d

5    715, 721 (9th Cir.1998) (The claimant's ability to do housework, to undertake occasional

6    weekend trips, and to engage in certain forms of exercise did not permit the ALJ to discredit

7    her account of the debilitating effects of her disease.);  *Baumgarten v. Chater*, 75 F.3d 366,

8    369 (8th Cir.1996) (Isolated activities such as pulling weeds, mowing the lawn, painting a

9    ceiling and housecleaning or grocery shopping do not indicate that a plaintiff could perform

10   full-time competitive work.  They "shed more light on [the claimant's] perseverance than on

11   the credibility of her complaints of pain.");  *Davis v. Callahan*, 125 F.3d 670, 674 (8th

12   Cir.1997) (The ALJ's determination that complaints of back pain were incredible was not

13   supported by substantial evidence where pain medication did not completely relieve

14   symptoms and the claimant could perform household activities such as reading, watching

15   television, needlepoint, visiting with friends, and driving.).

16        Finally the ALJ indicated that it is significant that Plaintiff indicated to Dr. Cooke that

17   she was not taking her medications and had not taken them for two months. (TR. 15).  The

18   ALJ believed that this suggested that Plaintiff's conditions were not unamenable to treatment

19   but rather were affected by Plaintiff's inability to follow prescribed treatment. Dr. Cooke was

20   charged with assessing Plaintiff's psychological problems and at the time of his assessment

21   of Plaintiff she was prescribed medication for her depression and emotional problems. (TR.

22   156).  While this evidence may be relevant in assessing Plaintiff's credibility with regard to

23   her testimony concerning her mental impairments, it is not sufficient evidence for the ALJ

24   to conclude that all of Plaintiff's conditions were amenable to treatment or that Plaintiff's

25   testimony with regard to all of her conditions was not credible.

26            <u>Remanded for award of benefits or for further administrative proceedings</u>

27        "'[T]he decision whether to remand the case for additional evidence or to simply

28   award benefits is within the discretion of the court.'"  *Rodriguez v. Bowen,* 876 F.2d 759, 763

- 20 -

1   (9th Cir.1989) *quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir.1985).   "Remand for

2   further administrative proceedings is appropriate if enhancement of the record would be

3   useful."    *Benecke,* 379 F.3d at 593 citing *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th

4   Cir.2000).   Conversely, remand for an award of benefits is appropriate where:

5       (1) the ALJ failed to provide legally sufficient reasons for rejecting the
    evidence; (2) there are no outstanding issues that must be resolved before a

6       determination of disability can be made; and (3) it is clear from the record that
    the ALJ would be required to find the claimant disabled were such evidence

7       credited.

8   *Id.* (citations omitted); *see also McCartey,* 298 F.3d at 1076-1077 (remanding for award of

9   benefits where ALJ failed to consider evidence of disability in the record).   Where the test

10   is met, "we will not remand solely to allow the ALJ to make specific findings...Rather we

11   take the relevant testimony to be established as true and remand for an award of benefits."

12   *Benecke,* 379 F.3d at 593 (citations omitted); *see also Lester,* 81 F.3d at 834 (same).

13         In determining whether to remand this case for award of benefits or for further

14   proceedings, the Court considers the errors made by the ALJ discussed above as well as the

15   findings of the ALJ not in dispute.   The ALJ determined that Plaintiff is of advanced age; is

16   suffering from severe impairments when considered in combination; is unable to perform her

17   past relevant work; and has a high school education with one year of business school. (TR.

18   17-18).   The ALJ also concluded that Plaintiff did not have any readily transferable skills.

19   (TR. 17). Applying these facts to the grid, the determination is that Plaintiff is disabled. 20

20   C.F.R. Pt. 404, Subpt. P, App.2, Table No.1.   Considering this and taking as true the

21   testimony disregarded by the ALJ in error, the Court finds that it is appropriate to remand this

22   case for an award of benefits.

23   RECOMMENDATION

24         For the foregoing reasons, the Magistrate Judge recommends that the District

25   Court, after its independent review, **deny** Defendant's Cross-Motion for Summary

26   Judgment (Doc. No. 16), **grant** Plaintiff's Motion for Summary Judgment (Doc. No. 14)

27   and remand this action for an award of benefits.

28

1    Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections

2   within 10 days after being served with a copy of this Report and Recommendation.  If

3   objections are not timely filed, the party's right to de novo review may be waived.  *See*

4   *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc), *cert. denied*,

5   540 U.S. 900 (2003).  If objections are filed, the parties should direct them to the District

6   Court by using the following case number: CV 04-00635-TUC-CKJ.

7    The Clerk of the Court is directed to send a copy of this Report and

8   Recommendation to all parties.

9    DATED this 13th day of February, 2006.

10

11

12   CHARLES R. PYLE
     UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28